IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Ramon Canellada,

    Plaintiff,

v.

Preferred Open MRI, Ltd.

    Defendant.

No.

Judge

Jury Demanded

## COMPLAINT

### INTRODUCTORY STATEMENT

1. A body of literature exists revealing that people with disabilities report poorer health and poorer health outcomes compared to their non-disabled counterparts.[1] People with physical disabilities or cognitive limitations experience greater rates of cardiac disease, diabetes, stroke, arthritis, and asthma, as well as high blood pressure and cholesterol levels than people without disabilities.[2] The main reason for this can be attributed to the pervasive existence of access barriers—i.e., architectural, programmatic, communication, and other barriers, as well as the lack of disability-specific cultural competence among healthcare providers. This case is about one such barrier: Defendant denied necessary healthcare services to Plaintiff because he uses a wheelchair.

---

[1] *See* A. Reichard, Ph.D. et al., *Health Disparities among Adults with Physical Disabilities or Cognitive Limitations Compared to Individuals with No Disabilities in the United States*. Disability and Health Journal, Vol. 4, Issue 4, October 2011, pp. 59-67. Available at https://pubmed.ncbi.nlm.nih.gov/21419369/.

[2] *See also* T. Lagu, M.D., et al., *Access to Subspecialty Care for Patients with Mobility Impairment: A Survey.* Annals of Internal Medicine, Vol. 158, No. 6, March 19, 2013, pp. 441-446. Available at http://annals.org/article.aspx?articleid=1667265.

2. Plaintiff Ramon Canellada ("Mr. Canellada") has an ependymoma tumor in his spinal cord which causes complete paralysis from the waist down. It is essential for Mr. Canellada to receive MRIs as they are the only way to monitor his condition and prevent progression. Mr. Canellada selected Defendant because its 4200 W. 63rd Street location was the closest MRI center to his home and visited the center in advance to ensure his insurance was accepted. Nonetheless, on or about May 23, 2024, Defendant refused to provide services to Mr. Canellada because he used a wheelchair.

3. Mr. Canellada brings this case to prevent him—and others who use wheelchairs—from experiencing poor health outcomes due to inaccessible healthcare services and facilities. Mr. Canellada brings this complaint under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq*. ("ADA"), Section 504 of the Rehabilitation Act of 1973 as amended, 29 U.S.C. § 791 *et seq*. ("Rehabilitation Act" or "Section 504"), Section 1557 of Patient Protection and Affordable Care Act (the "Affordable Care Act" or "Section 1557"), 42 U.S.C. § 18001, *et seq*., and the Illinois Civil Rights Remedies Restoration Act, 775 ILCS § 60/1, *et seq*., to seek a declaration that the Defendant illegally discriminated against him because of his disability and to enjoin Defendant's prohibited conduct of refusing to provide services to individuals who use wheelchairs. Mr. Canellada also seeks compensatory damages.

## JURISDICTION

4. This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 (conferring jurisdiction over civil actions arising under laws of the United States) as they arise out of the protections provided in Section 504 of the Rehabilitation Act, Title III of the ADA and Section 1557 of the Affordable Care Act. This Court has supplemental jurisdiction over the Illinois Civil Rights Remedies Restoration Act in accordance with 28 U.S.C. § 1367(a)(conferring

jurisdiction over state law claims to federal courts when the state claims are "so related . . . that they form part of the same case or controversy . . . .").

5. Mr. Canellada's claims for declaratory and other relief are authorized by 28 U.S.C. §§ 2201 and 2202.

6. This Court is the appropriate venue under 28 U.S.C. § 1391(b) in that the Defendant is subject to personal jurisdiction in this District and the events giving rise to this Complaint occurred in this District.

## PARTIES

7. Mr. Canellada is a 53-year-old man who resides in Chicago, Illinois.

8. Mr. Canellada has an ependymoma tumor which causes complete paralysis from the waist down. Mr. Canellada's doctors have advised him that he will need regular MRI screenings to monitor this tumor because of the risk that it could change and cause complete paralysis. Mr. Canellada received a referral for an MRI by his primary care provider at Rush University Medical Center.

9. Mr. Canellada is a qualified individual with a disability under the ADA, the Rehabilitation Act and the Affordable Care Act.

10. Defendant Preferred Open MRI, Ltd. ("Open MRI") operates seven medical facilities across Chicago, all of which provide MRI imaging services. Open MRI prides itself as having "[e]xpert radiologists and support staff dedicated to providing the best patient care and imaging services in Chicago area."

11. Open MRI's facilities include a facility at 4200 W. 63rd Street in Chicago, IL 60629 ("63rd Street Office").

12. On information and belief, Open MRI has fifteen or more employees.

13. As a result of participating in Medicare and Medicaid, Defendant Open MRI is a recipient of federal financial assistance as that term is used in the Rehabilitation Act.

14. Defendant is a "program or activity" within the meaning of Section 504 of the Rehabilitation Act. 29 U.S.C. § 794(b)(1).

15. Defendant is a "public accommodation" as defined by Title III of the ADA. 42 U.S.C. § 12181(7).

16. Defendant is a "covered entity" as defined by Section 1557 of the Affordable Care Act. 45 C.F.R. § 92.4.

## THE LAWS INVOLVED

### THE AMERICANS WITH DISABILITIES ACT (ADA) (42 U.S.C. § 12181)

17. The ADA contains three substantive Titles that address discrimination in the areas of employment, public services, and public accommodations. Mr. Canellada brings this complaint under Title III of the ADA, which prohibits discrimination based on disability by public accommodations. 42 U.S.C. § 12182.

18. A public accommodation is defined to include a "professional office of a health care provider, hospital, or other service establishment." 42 U.S.C. § 12181(7)(F).

19. The law governing Title III is found at 42 U.S.C. § 12181 *et seq*. and is codified at 28 C.F.R. § 36.101 *et seq*.

20. Pursuant to Title III of the ADA, Defendant cannot discriminate against Mr. Canellada or other persons with disabilities based on their disabilities. 42 U.S.C. § 12182(a).

21. The ADA prohibits Defendant from denying on the basis of disability "the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of [Defendant]." 42 U.S.C. § 12182(b)(1)(A)(i).

22. The ADA also prohibits Defendant from providing "the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

23. Further, the ADA prohibits Defendant from providing "a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals . . . ." 42 U.S.C. § 12182(b)(1)(A)(iii).

24. The ADA requires Defendant to provide "[g]oods, services, facilities, privileges, advantages, and accommodations . . . in the most integrated setting appropriate to the needs of the individual." 42 U.S.C. § 12182(b)(1)(B).

25. Defendant must "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . ." 42 U.S.C. § 12182(b)(2)(A)(ii).

## THE REHABILITATION ACT (29 U.S.C. §794)

26. At all relevant times herein, Defendant received federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and are therefore subject to the antidiscrimination provisions of the Rehabilitation Act, as herein described.

27. At all relevant times herein, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and its implementing regulations, 45 C.F.R. § 84.4(a).

28. Section 504 of the Rehabilitation Act prohibits discrimination by recipients of federal funding against otherwise qualified individuals on the basis of their disabilities. 29 U.S.C. § 794. The Section 504 regulation provides:

> "A recipient, in providing any aid, benefit, or service, may not, ... on the basis of handicap: (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others ..."

45 C.F.R. § 84.4(b)(1)(ii) (2023). Elsewhere, the Section 504 regulation states:

> "In providing health, welfare or other social services or benefits, a recipient may not on the basis of handicap: … (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered non-handicapped persons."

45 C.F.R. § 84.52(a)(2) (2023).

29. The Rehabilitation Act and the ADA are functionally identical except that the Rehabilitation Act also requires proof of the receipt of federal funds. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015).

**THE PATIENT PROTECTION AND AFFORDABLE CARE ACT (42 U.S.C. § 18116)**

30. At all relevant times herein, Defendant received federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and are therefore subject to the antidiscrimination provisions of the Affordable Care Act, as herein described.

31. At all relevant times herein, there was in full force and effect a statute known as the Affordable Care Act, 42 U.S.C. § 18001, *et seq.*, Pub. L. 111-148, and its implementing regulations, 45 C.F.R. §§ 92.1 *et seq.*.

32. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 *et seq.*, effective as of July 18, 2016, apply to health programs or activities administered by recipients of federal financial assistance from the Department of Health and Human Services. Said regulations define a "health program or activity" as "any project, enterprise, venture, or undertaking to: . . . [p]rovide clinical, pharmaceutical, or medical care." 45 C.F.R. § 92.4.

33. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116.

34. The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1).

35. Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule. *See* 45 C.F.R. § 92.301.

**THE ILLINOIS CIVIL RIGHTS REMEDIES RESTORATION ACT (775 ILCS § 60/20)**

36. At all relevant times the statute Civil Rights Remedies Restoration Act, 775 ILCS 60/1, *et seq.*, was in full force and effect.

37. Section 15 of the Civil Rights Remedies Restoration Act defines a violation of the act as a violation of Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. 12132, *et seq.*), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), or Section 1557 of the Patient Protection and Affordable Care Act (42 U.S.C. 18116). Therefore, a violation of any of the above named acts constitutes a violation of the Civil Rights Remedies Restoration Act.

38. Any violator of the Civil Rights Remedies Restoration Act is liable for a minimum of $4,000 in damages, including but not limited to, damages for emotional pain, inconvenience, mental anguish, and any attorney's fees and costs. 775 ILCS § 60/20.

39. Any violator of the Civil Rights Remedies Restoration Act is also liable for any injunctive relief judged appropriate. 775 ILCS § 60/25.

**STATEMENT OF FACTS**

40. Mr. Canellada resides in the City of Chicago.

41. Mr. Canellada is a person with disabilities. He relies on a wheelchair for all mobility purposes. His wheelchair is approximately twenty-four inches wide.

42. Mr. Canellada's neurosurgeon referred him to get an MRI to monitor the progress of his ependymoma tumor in his spinal cord. Without regular monitoring, Mr. Canellada's condition can worsen, and cause his paralysis to extend up his body.

43. Mr. Canellada's doctors told him he will need ongoing MRIs to monitor his condition.

44. On or about May 16, 2024, Mr. Canellada searched for MRI providers near his home and chose the Open MRI's 63rd Street Office because of its proximity to his home. Located only three blocks away, Mr. Canellada can easily roll to the 63rd Street Office in his wheelchair.

45. On or about that same day, Mr. Canellada took his preapproval documents to the 63rd Street Office to verify that his insurance was accepted at that location. The Open MRI employee confirmed that they accepted his insurance and was able to see that he is a wheelchair user. On that date, Mr. Canellada confirmed his appointment for the following week.

46. Due to the number of images he needed and the length of time necessary for each, Mr. Canellada scheduled three appointments on different days at Open MRI.

47. On or about May 23, 2024, Mr. Canellada went to the 63rd Street Office for his first MRI imaging.

8

48. After waiting in the lobby for approximately thirty minutes, two Open MRI employee came to speak to him.

49. One employee informed Mr. Canellada that they were unable to provide him with MRI services because he used a wheelchair.

50. Defendant's staff stated that they were not trained to pick up Mr. Canellada and transfer him. When Mr. Canellada explained that he could transfer independently, Defendant's staff stated that the big magnet as a part of the MRI machine would not allow him to be in the room with his wheelchair.

51. Defendant's staff further stated Open MRI could not serve "people like him" because he is a wheelchair user and criticized him for not bringing someone else with him to the appointment.

52. Mr. Canellada's wheelchair is completely titanium. Nonetheless, Defendant refused to serve him or to accommodate his disability.

53. Mr. Canellada explained to the staff member that he had brought his wheelchair into the room with the MRI machine before. The staff member did not respond to that statement.

54. This lack of access forced Mr. Canellada to leave the facility without obtaining his MRIs, causing a delay in his medical care.

55. Upset by this experience, Mr. Canellada called Open MRI by phone to lodge a complaint. He spoke to a woman who again told him that Open MRI could not serve him because he used a wheelchair.

56. This experience caused Mr. Canellada to experience anxiety, emotional distress, frustration, and embarrassment. Telling him that "people like him" could not be serviced at their facility made him feel excluded, othered, abnormal, and discriminated against. He was also

frustrated that he would have to go to a location farther away from his home and outside of his neighborhood to complete all the MRIs he required to monitor his health condition.

57. Due to the increased distance he needed to travel to secure MRI services, Mr. Canellada ultimately combined the three MRI appointments into two, which required him to be confined in the MRI scanner over a longer period of time, causing him more discomfort.

58. Mr. Canellada desires to receive healthcare services from Open MRI at its 63rd Street Office for his ongoing MRI needs due to its proximity to his home.

## COUNT I:
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT
## (42 U.S.C. § 12181)

59. Paragraphs 1 – 58 above are incorporated as if set forth fully herein.

60. Title III of the ADA prohibits discrimination against individuals with disabilities and extends the non-discrimination rule of Section 504 of the Rehabilitation Act to services provided by any public accommodation. 42 U.S.C. § 12182.

61. Defendant is a public accommodation subject to the requirements of the ADA because it is a "professional office of a health care provider, hospital, or other service establishment." 42 U.S.C. § 12181(7)(F).

62. Mr. Canellada is a qualified individual with a disability within the meaning of the ADA. Due to his ependymoma tumor in his spinal cord which causes complete paralysis, he is substantially limited in several major life activities, including walking and standing.

63. Defendant violated the ADA by denying Plaintiff, on the basis of his disability, the opportunity to participate in or benefit from its healthcare facilities and services.

64. Defendant violated the ADA by failing to provide Plaintiff the opportunity to participate in or benefit from its healthcare facilities and services in a way comparable to others and in the most integrated setting appropriate.

65. Defendant violated the ADA by failing to make reasonable modifications to its policies, practices, or procedures when such modifications are necessary to afford Plaintiff access to its healthcare facilities and services.

66. Defendant operates its imaging centers without accessible MRI machines and therefore discriminates against Plaintiff in violation of the ADA.

67. Defendant's decision to operate imaging centers as it presently does renders Defendant's imaging center inaccessible to Mr. Canellada and other individuals who use wheelchairs.

68. Defendant's acts and omissions constitute a violation of Mr. Canellada's rights under the ADA. Defendant's conduct constitutes an ongoing and continuous violation of the ADA and unless restrained and enjoined from doing so, Defendant will continue to violate the ADA. Defendant's acts and omissions, unless enjoined, will continue to inflict irreparable injuries for which Mr. Canellada has no adequate remedy at law. As a proximate result of Defendant's violations of the ADA, Defendant has inflicted injury and damages upon Mr. Canellada, including increased transportation costs, a loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

**COUNT II:**
**DISCRIMINATION UNDER § 504 OF THE REHABILITATION ACT OF 1973**
**(29 U.S.C. § 794 *et seq*.)**

69. Paragraphs 1 – 68 above are incorporated as if set forth fully herein.

70. Section 504 of the Rehabilitation Act prohibits discrimination against otherwise qualified individuals on the basis of their disabilities by recipients of federal funding. *See* 29 U.S.C. § 794.

71. Defendant receives federal financial assistance as a result of its participation in the Medicare and Medicaid programs and is subject to the requirements of Section 504.

72. Mr. Canellada is "handicapped" within the meaning of Section 504. Due to his ependymoma tumor in his spinal cord which causes complete paralysis, he is substantially limited in several major life activities, including walking and standing.

73. Defendant violated Section 504 by denying Plaintiff, on the basis of his disability, the opportunity to participate in or benefit from its healthcare facilities and services.

74. Defendant violated Section 504 by failing to provide Plaintiff the opportunity to participate in or benefit from its healthcare facilities and services in a way comparable to others.

75. Defendant violated Section 504 by failing to make reasonable modifications to its policies, practices, or procedures when such modifications are necessary to afford Plaintiff access to its healthcare facilities and services.

76. Defendant operates its imaging centers without appropriate procedures in place to make its MRI machines accessible and therefore discriminates against Plaintiff in violation of Section 504.

77. Defendant's decision to operate an imaging center as it presently does renders Defendant's imaging centers inaccessible to Mr. Canellada and other individuals with disabilities.

78. Defendant's acts and omissions constitute a violation of Mr. Canellada's rights under Section 504. Defendant's conduct constitutes an ongoing and continuous violation of Section 504 and unless restrained and enjoined from doing so, Defendant will continue to violate Section 504. Defendant's acts and omissions, unless enjoined, will continue to inflict irreparable injuries for which Mr. Canellada has no adequate remedy at law.

79. Defendant's acts and omissions were made intentionally and with deliberate indifference to Mr. Canellada's right to be free from discrimination on the basis of his disability under Section 504.

80. As a proximate result of Defendant's violations of Section 504, Defendant has inflicted injury and damages upon Mr. Canellada, including increased transportation cost, a loss of a civil rights, mental anguish, humiliation, and mental pain and suffering.

## COUNT III:
## VIOLATIONS OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT
## (42 U.S.C. § 18116)

81. Paragraphs 1 – 80 above are incorporated as if set forth fully herein.

82. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116.

83. Section 1557 prohibits an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.2(2023).

84. Section 1557 requires that covered entities "make reasonable modifications to [their] policies, practices, or procedures when such modifications are necessary to avoid discrimination on the basis of disability." 45 C.F.R. § 92.105 (2023).

85. Defendant violated Section 1557 by denying Plaintiff, on the basis of his disability, the opportunity to participate in or benefit from its healthcare facilities and services.

86. Defendant violated Section 1557 by failing to make reasonable modifications to its policies, practices, or procedures when such modifications are necessary to afford Plaintiff access to its healthcare facilities and services.

87. Defendant operates its imaging centers without policies, practices, or procedures that make it accessible to people with disabilities, including Mr. Canellada.

88. Defendant's decision to operate imaging centers as it presently does renders Defendant's medical program inaccessible to Mr. Canellada and other individuals with disabilities.

89. Defendant's acts and omissions constitute a violation of Mr. Canellada's rights under Section 1557. Defendant's conduct constitutes an ongoing and continuous violation of Section 1557 and unless restrained and enjoined from doing so, Defendant will continue to violate Section 1557. Defendant's acts and omissions, unless enjoined, will continue to inflict irreparable injuries for which Mr. Canellada has no adequate remedy at law.

90. Defendant's acts and omissions were made with deliberate indifference to Mr. Canellada's right to be free from discrimination on the basis of his disability under Section 1557.

91. As a proximate result of Defendant's violations of Section 1557, Defendant has inflicted injury and damages upon Mr. Canellada, including increased transportation costs, a loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

## COUNT IV:
## VIOLATIONS OF THE CIVIL RIGHTS REMEDIES ACT
## (775 ILCS § 60/15)

92. Paragraphs 1 – 91 above are incorporated as if set forth fully herein.

93. Section 15 of the Civil Rights Remedies Restoration Act states that the Civil Rights Remedies Restoration Act is violated when there is a violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. 12132, *et seq.*), or Section 1557 of the Patient Protection and Affordable Care Act (42 U.S.C. 18116). *See* 775 ILCS 60/15.

94. As pled throughout, Defendant is in violation of Section 504 and Section 1557.

95. Section 20 of the Civil Rights Remedies Restoration Act provides for not less than $4,000 in damages per violation to encapsulate monetary losses, emotional pain, inconvenience, mental anguish, and attorney's fees and costs. *See* 775 ILCS 60/20.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff Mr. Canellada prays that this Court:

     A.     Declare that Defendant's refusal to provide healthcare services to Plaintiff violated the ADA, the Rehabilitation Act, the Affordable Care Act, and the Civil Rights Remedies Restoration Act;

     B.     Declare that Defendant's failure to be accessible to Mr. Canellada and other people who use wheelchairs is in violation of the ADA, the Rehabilitation Act, the Affordable Care Act, and the Civil Rights Remedies Restoration Act;

     C.     Enter a preliminary and permanent injunction against Defendant, ordering it to:

1. Adopt policies, practices, or procedures sufficient to allow Defendant to provide Mr. Canellada and other people who use wheelchairs equal access to its services;
2. Train staff on Defendant's legal obligation to provide accessible healthcare to Mr. Canellada and other wheelchair users;
3. Operate its medical facilities in such a manner that would allow Mr. Canellada and other wheelchair users to receive the benefits of Defendant's services; and
4. Purchase any assistive devices necessary to provide Defendant's services to Mr. Canellada and other wheelchair users—such as non-metallic imaging safe wheelchairs.

     D.     Award Mr. Canellada monetary damages;

     E.     Award Mr. Canellada reasonable costs and attorneys' fees; and

     F.     Grant such other relief as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff Mr. Canellada demands a jury trial on all issues properly triable by a jury.

Dated: September 4, 2024

Respectfully Submitted,

                                        /s/ Charles R. Petrof
                                        Charles R. Petrof
                                        Senior Attorney at Access Living

Charles R. Petrof (ARDC No. 6231201)
ACCESS LIVING OF METROPOLITAN CHICAGO
115 W. Chicago Ave.
Chicago, Illinois 60654
Phone:   (312) 640-2124
Fax:      (312) 640-2139
TTY:     (312) 640-2169
cpetrof@accessliving.org


Rachel M. Weisberg (ARDC No. 6297116)
DISABILITY RIGHTS ADVOCATES
300 S. Wacker, Floor 32
Chicago, Illinois 60606
Phone:   (332) 217-2363
rweisberg@dralegal.org